### METCALF *against* GILLET and another.

Title to real estate by levy of execution, being founded exclusively on the positive provisions of statute, those provisions must be strictly pursued.

Under the revised statutes, it is indispensibly necessary, that the appraisement be in writing, signed by the appraisers, and delivered to the officer, before the property is set off.

The return of the officer must state expressly, or shew by necessary inference, that these requirements have been complied with.

Parol evidence is inadmissible to aid any defect in such return.

This was an action of ejectment, tried at *Brooklyn,* *September* term, 1823, before *Peters,* J.

The plaintiff claimed title, by virtue of the levy of an execution, issued on a judgment of the county court for *Windham* county, legally rendered at the *December* term, 1821, in favour of the plaintiff, against *Isaac Gillet,* one of the defendants. The return of the sheriff stated a demand of the debtor ; and, on his neglect of payment, a levy of the execution on the land in question ; the appointment of appraisers ; and then proceeded as follows : " And the said appraisers, then and there, on a view of said described premises, on which this execution had been so levied, did, upon their oaths, appraise the said premises at the sum of 48 dollars, 70 cents, *per* acre, as the then present true and just value thereof to the creditor in this execution ; and the sums mentioned in this execution being 131 dollars, 25 cents, and the lawful charges of executing the same being 15 dollars, 76 cents, amounting to the sum of 147 dollars, 1 cent, I,

on the 8th day of *April*, 1822, set off to the said *Daniel Metcalf*, the creditor in this execution, three acres and three rods of said appraised premises, bounded, &c. in full satisfaction of this execution, and my fees and charges thereon." The plaintiff offered to prove, that the appraisers made an appraisement under their hands of the land in question, and delivered it to the officer, before the land was set off. The plaintiff also offered to prove, that the officer delivered said appraisement, with other appraisements of other lands set off by him on other executions against the defendant, to the appraisers, to be redrafted, and signed by them, and delivered back to the officer ; and the plaintiff offered to produce said certificate in court. The defendant objected to the admission in evidence of the officer's return and the testimony adduced to prove said other facts ; and the judge sustained the objection, and ruled out such return and testimony. The plaintiff having no other evidence of title, the judge directed the jury to return a verdict for the defendants ; which was accordingly done.

*Cleaveland* and *Judson*, in support of the motion, contended, 1. That the revised statute ought to receive the same construction as the old ; the requirements of both, in relation to this subject, being *substantially the same*, and therefore within the third proviso of the general confirming act. *Stat.* 485. That the levy, in this case, is sufficient, under the old law, will not be controverted.

2. That if the law requires an appraisement in writing, it is not necessary that it should be incorporated in the return of the officer. Even the revised statute does not require this ; and all that it does require, appears from the case, to have been done.

3. That if it must appear from the return, that there was an appraisement in writing, this return sufficiently shews it, as it states an appraisement, which must be presumed to a legal appraisement. *Herring* & al. v. *Polley*, 8 *Mass. Rep.* 113. 119, 120. *Barnard* v. *Fisher*, 7 *Mass. Rep.* 71.

*Goddard*, contra, contended, 1. That the acquisition of title to real estate by the levy of execution, being unknown to the common law, and given by statute only, all the requirements of the statute must be strictly complied with, or no title passes. 2. That among these requirements are an appraisement—a certificate thereof, signed by the appraisers, or either two of

Metcalf
v.
Gillet.

them—and the delivery of such certificate to the officer.   *Stat.*
*p.* 57. *tit.* 2. *s.* 76.

3. That the only evidence that these requirements have been
complied with, is, the return of the officer; which must state
all the facts essential to a transfer of title, explicitly.   No fact
not so stated, can be *presumed.*

4. That, at any rate, the parol evidence offered to shew a
compliance with the statute, was correctly rejected.

HOSMER, Ch. J. The plaintiff claims title under an execu-
tion, and the only question in the case, is, whether it was duly
levied.   The appraisers of the land levied upon were legally
appointed; and their appraisement, in the sheriff's return, is
set forth in the following words : "On a view of said described
premises, on which the execution had been so levied, the ap-
praisers did, upon their oaths, appraise the said premises at the
sum of 48 dollars, 70 cents, *per* acre, as the then present true
and just value thereof to the creditor in this execution."   It
does not appear by the return of the officer, that the appraisers
made an estimate of the land levied upon in writing under their
hands, or either two of them, and the same delivered to such
officer; and on the ground of this omission in the return, an
objection is made to the plaintiff's title.   At the trial, the plain-
tiff offered to prove, that the appraisers made an appraisement
under their hands of the land aforesaid, and delivered the same
to the officer, before the land was set off, which he delivered to
the defendant, to be redrafted and signed by the appraisers, and
offered to produce the certificate in court; but the testimony
was ruled out, and a verdict directed for the defendants.

I will, first, consider the necessity of the appraisers' certifi-
cate in writing; and then, whether it is indispensible, that it
should, by the officer's return, appear to have been made, and
delivered, before the land was set off.

At common law, a title in land could not be acquired, by the
levy of an execution.   By the statute formerly existing, and re-
cently repealed, *p.* 282. ed. 1808. it was provided, that execu-
tions might be levied on the land of the debtors; and the value
of the same being estimated by appraisers, appointed in a pre-
scribed mode, that the indorsement of the officer made and re-
corded with the execution, should give title.   His return was
alone necessary to shew, that all the requisites of the law had
been observed.   *Pendleton* v. *Button,* 3 *Conn. Rep.* 406.   At
the late revision, the General Assembly, in view of the former

act, with all its benefits and mischiefs, thought proper to pre-
scribe a rule of evidence relative to the appraisement of land
on execution.    After designating the mode of appointing the
appraisers, the law proceeds thus : " which appraisers, being
sworn according to law, shall make an estimate of such land or
real estate, according to its true value, in writing under their
hands, or either two of them, and the same deliver to such offi-
cer ; who shall thereupon set out to the creditor, by metes and
bounds, so much of the lands as may be sufficient, at the ap-
praisal, to pay the debt on the execution, and the lawful char-
ges." *Stat. p.* 57. *tit.* 2 *sect.* 57.   It must not be forgotten, that
the only way, in which title can be acquired to land, by the
levy of an execution, is, by an observance of all the requisites
of this positive law.   The common law gives no such right ;
the former act is repealed ; and the legislature had authority to
prescribe, and have prescribed, the only manner in which the
real estate of a debtor may be taken from him.   The act has
declared, that the estate shall be appraised, by indifferent free-
holders of the town where the lands lie.   It would seem reason-
able, if both creditor and debtor should agree upon appraisers
from a different town, that this should be sufficient ; but it was
correctly adjudged in *Chapman* v. *Griffin,* 1 *Root* 196. agreea-
bly to former decisions, that no title was acquired, by the levy
of an execution on land, the same having been appraised, by
persons agreed on by the creditor and debtor, one of whom did
not belong to the town where the land lay.   And the determin-
ation was made on this invincible reason, " that the statute is
*express,* that the land shall be appraised by freeholders of the
same town ; and *the agreement of the parties cannot alter the
law.*"   By this decision, the principle is recognized, that, as the
title is not by act of the parties, but by operation of law, the
provisions of the law must be strictly observed.   The statute,
in so many words, requires, that the estimate of the appraisers
shall be in writing, and signed by them, and delivered to the
officer ; and that, *thereupon,* and not before, he shall proceed,
by metes and bounds, to set off the land.   No expression in the
*English* language can be more explicit or unequivocal.   The
first and most obvious maxim of interpretation, is, " that it is
not permitted to interpret what has no need of interpretation."
*Vattel, lib.* 2. *c.* 17. *s.* 263.   When an act is conceived in clear
and precise terms, leading to nothing absurd, there can be no
reason to refuse the sense, which the expressions naturally pre-
sent.   It was correctly said, by *Marshall,* Ch. J. in *Fisher* v.

*Blight,* 2 *Cranch* 390. that "Where only a political regulation is made, which is inconvenient, if the intention of the legislature be expressed in terms, which are sufficiently intelligible to leave no doubt in the mind, when the words are taken in their ordinary sense, it would be going a great way to say, that a constrained interpretation must be put upon them, to avoid an inconvenience, which ought to have been contemplated in the legislature when the act was passed, and which, in their opinion, was probably over-balanced, by the particular advantages it was calculated to produce." And in the case of *Curtis* v. *Hurlburt,* 2 *Conn. Rep.* 315. it was observed, by the late Ch. J. *Swift,* that "Where the meaning of the statute is plain and evident, *we must construe it according to its words*; and it never can be admitted to give a construction to a statute *different from the import of the words,* from a conjecture, that the legislature had a different meaning." The act in question is a remedial law; and, so far as relates to the certificate of appraisers, a statute of evidence. A mischief must have been supposed to arise from the *ore tenus* communications to the officer of an appraisement of land on execution; and to correct this, the law now existing has specifically required, that it shall be in writing, signed by the appraisers, and delivered to such officer, *before* he shall set off the land. This written evidence is made indispensible, and is the only medium, through which the officer can know the value of the land. I consider it as necessary under the statute concerning executions, as the same species of evidence is, under the statute of frauds; and for precisely the same reason. There is no ground for the assertion, that the evidence required, is matter of *form.* It is as much of substance, and equally to be respected, as any other provision of the law. It follows conclusively, that until the officer is possessed of the appraiser's certificate, duly executed, he cannot set off land on execution.

The return of the officer is the legal and only evidence, that the prescriptions of law have been complied with. The object of it is, to shew to the debtor, that his land is transferred, and debt extinguished; and to all the world, that the title is vested in the creditor. To this end, it is indispensible, that it exhibit proof of compliance with every necessary fact, and when this exhibit is made, that it should be conclusive. The return can neither be extended nor diminished, by testimony *ore tenus*; for this would be, virtually, to annul it, and put every execution title in jeopardy; or to make a title, when none has been

made, by legal evidence. The general nature and object of a return; the subject matter in the particular case; and the law requiring an indorsement on the execution of the facts,—all concur in demonstrating the above proposition. As an agreement for the sale of land cannot rest partly in writing and partly in parol; (*Parkhurst* & al. v. *Van Cortlandt,* 1 *Johns. Chan. Rep.* 273.) so *a fortiori* the title to land by execution cannot rest in part on the return, and partly on verbal evidence. It is indispensible, that the return of the officer should comprise all the requisite facts; and they must appear expressly, or by necessary inference. The assertion in the return, that *the land was appraised,* is no more than was necessary to a compliance with the former laws, when no written evidence was required. It is no evidence, that the appraisement was in writing; that it was delivered to the officer; and much less, that it was delivered before the land was set off. If such an affirmation were held sufficient, it would imply that the law is unchanged, and would, virtually, operate a repeal of the existing statute. Both public and private convenience unite with established principle in demanding, that the return should demonstrate, with reasonable certainty, every legal requisite to have been observed; and nothing ought to be assumed by conjecture.

It is clear, that the return of the sheriff on the execution, at the foundation of the plaintiff's title, is deficient in a necessary requisite; and that it cannot be aided, by parol testimony.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

New trial not to be granted.